UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

SHARIA GADDY, et al.,                    :

                    Plaintiffs,          :    **REPORT & RECOMMENDATION**

          -against-                      :    **13 Civ. 0982 (SAS)(MHD)**

THE CITY OF NEW YORK, et al.,            :

                    Defendants.          :
----------------------------------x

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:

                                              11/18/13

          Based on our review of the verified complaint, the proposed

stipulation of settlement, the affirmation of counsel, the

affidavits of the legal guardians of the six infant plaintiffs,

and the representations of counsel made on the record during our

November 12, 2013 conference (see transcript attached) and on our

findings on the same record (see id. at 9), we recommend that the

settlement agreement be approved.


          Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the

Federal Rules of Civil Procedure, the parties shall have fourteen

(14) days from this date to file written objections to this

Report and Recommendation. Such objections shall be filed with

the Clerk of the Court and served on all adversaries, with extra

copies to be delivered to the chambers of the Honorable Shira A.
Scheindlin, Room 1620, and to the chambers of the undersigned,
Room 1670, 500 Pearl Street, New York, New York, 10007. Failure
to file timely objections may constitute a waiver of those
objections both in the District Court and on later appeal to the
United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140,
150 (1985); Small v. Sec'y of Health and Human Servs., 892 F.2d
15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72,
6(a), 6(d).


Dated: New York, New York
       November 18, 2013



                         RESPECTFULLY SUBMITTED,


                         _____
                         MICHAEL H. DOLINGER
                         UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Order have been sent today to:

Steven A. Hoffner, Esq.
Law Office of Steven Hoffner
Fax: (212) 941-8137

Nicholas Melissinos, Esq.
Corporation Counsel of the City of New York
Fax: (212) 788-9776

DBCLGADC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   SHARIA GADDY, et al.,

 4                   Plaintiffs,

 5             v.                        13 CV 982 (SAS)(MHD)

 6   THE CITY OF NEW YORK, et al.,

 7                   Defendants.

 8   ------------------------------x
                                      New York, N.Y.
 9                                    November 12, 2013
                                      2:23 p.m.
10
     Before:
11
                     HON. MICHAEL H. DOLINGER,
12
                                      Magistrate Judge
13
                            APPEARANCES
14
     STEVEN A. HOFFNER
15        Attorney for Plaintiffs

16   NEW YORK CITY LAW DEPARTMENT
     OFFICE OF THE CORPORATION COUNSEL
17        Attorneys for Defendants
     BY:  NICHOLAS MELISSINOS
18

19

20

21

22

23

24

25
```

DBCLGADC

1          THE COURT:   I have been asked to review what has been

2     represented to be an agreement, albeit unsigned by the parties,

3     to settle the case.   The review is necessitated, as I

4     understand it, by the fact that the plaintiffs, either some or

5     all, are not of majority age and thus court approval has to be

6     obtained.

7               I have received a document labeled a stipulation of

8     settlement, which bears a signature of plaintiffs' counsel but

9     no one else, and a variety of other papers including an

10    attorney affirmation by plaintiffs' counsel, which is a bit

11    skeletal to say the least, and then affidavits of guardians and

12    a proposed infant compromise order.

13              Let me first of all ask what is the nature of the

14    claims in the case, what steps were taken to litigate the case,

15    what are the considerations that drove the settlement, and what

16    are the terms of the settlement that you're proposing that the

17    Court approve?

18              MR. HOFFNER:   Well, if I may, your Honor, I apologize

19    to the extent that the affirmation by myself is not sufficient.

20    But I would certainly be able to articulate the full terms of

21    the settlement.

22              I do believe that you should be familiar with the case

23    in the sense we did have a settlement conference where, if you

24    recall, about 15 individuals, maybe 20 of them came in.   This

25    was a multiple arrest:   13 plaintiffs -- seven adults, six

DBCLGADC

1   infants.  Initially there was seven infants but one of the

2   infants is now of majority.  And although at that point -- and

3   I forget how many months ago it was.  It was probably in March

4   or April we came before your Honor, and at that point the City

5   of New York had offered --

6                THE COURT:  It was July 9.

7                MR. HOFFNER:  July.  Thank you.  They had offered

8   35,000 in a global settlement of this case.

9                And just to give you the background, this is an

10  incident that occurred in the Bronx in which the police

11  officers initially stopped a bunch of young kids, 12-, 13-,

12  14-year-olds who live in the area.  It's a Saturday afternoon.

13  And there was an accusation that somebody had thrown either a

14  bottle -- it changed a variety of times, whether it was bottles

15  off the roof, flower pot, eggs -- those are the variety of

16  things that were alleged to have been thrown.

17                And some family members upon seeing the detention of

18  the young children started to get upset, called the parents

19  over.  The parents came down.  This thing just got completely

20  out of hand where not only did they arrest the children, but

21  they ended up arresting a bunch of the parents and other

22  siblings of some of the initial kids that were stopped.

23                The reason that I believe the settlement is fair is

24  that, first of all, they had originally offered 35,000 total.

25  Ultimately, for 13 plaintiffs, they came up to over 200 -- I

DBCLGADC

1  think the sum total for is 245?

2          MR. MELISSINOS:  It's 249,000.

3          MR. HOFFNER:  $249,000.  And that was with your

4  Honor's assistance.  I would just thank your Honor because you

5  did have a discussion with both sides and recommended that we

6  go back and talk some more.  I ended up having further

7  discussions with senior counsel of the city where we explained

8  why 35,000 total was wholly insufficient.

9          The reason why I do believe 15,000 for each of the six

10  infants is fair is because they did each only spend around five

11  to six hours in custody.  They were not physically injured.

12  The only people that were injured were some of the adults who

13  sustained some cuts and bruises.  I do believe one of the

14  parents indicated that her son had been maced, as well, but in

15  her affidavit she does indicate that her son is fine now.

16          So it's a standard contingency agreement where the

17  plaintiffs' attorney receives a third of the net recovery.

18          I would also note that I did represent all 13 of them

19  in criminal court, excuse me, some of them were in family

20  court.  But what I did was they didn't have the money to afford

21  a lawyer but in taking the case, I took it on a lien basis of

22  only $1,500 per individual, not knowing whether this case was

23  going to be ten appearances, whether some of them were going to

24  be indicted or whether there might be a trial.  So my fee was

25  capped at $1,500 because there were multiple people.

DBCLGADC

1      I did realize that it may not go to trial, and I was
2  ultimately able to succeed and get every case dismissed with a
3  number of appearances for each individual plaintiff talking to
4  the family court, the corp. counsel from family court, talking
5  to the prosecutor's office in the Bronx.
6      I did go up to the scene, obviously, and meet with all
7  the plaintiffs and their parents, went to the roof, took
8  photographs of that nature, did some investigation, and
9  obviously brought this case in your Honor's court.
10      Ultimately, some of the other plaintiffs did get more
11  money, but they got more money because they spent more time in
12  jail.  Some of them spent 18 hours.  Originally one of them was
13  offered -- the way it worked out when they came back to me with
14  more money, Judge, was they offered $10,000 for each of the
15  infants, 20,000 for the adults, and 25,000 for Trina
16  Stephenson, who you heard from because she spoke and she even
17  talked about how she lost a job that she was about to start
18  working in a daycare center.  I then provided proof to the city
19  about the loss of the job and the city ultimately raised their
20  offer to Ms. Stephenson to 30,000.
21      And I was able to get 22,000 for the other plaintiffs,
22  showing they were actually in jail even longer than the city
23  thought.  And I was able to get another $5,000 for each of the
24  other plaintiffs, the infants.
25      So I feel it's a fair settlement.  I know the families

DBCLGADC

1     are happy with the settlement.  I've submitted the proposed

2     infant compromise order for all six plaintiffs with me then

3     putting it into an escrow account for the children.  I

4     designated Citibank just because it seemed to make sense.

5     There should be one up there which we can go to and we can put

6     it into the account on behalf of the child until the child

7     reaches 18 years old.

8              Obviously, the city has their own reasons for settling

9     this case for the number they did.  But in my 20 or so years of

10    doing civil rights litigation, I do feel pretty good about it.

11    I know it was going to be a battle of who did what without any,

12    basically, any video to show what really happened.  And

13    considering the injuries were not severe, I did think that it

14    was a very appropriate settlement.

15             THE COURT:  What was the course of the litigation

16    apart from just talking settlement?

17             MR. HOFFNER:  We exchanged documents.  We exchanged

18    releases.  I provided photographs.  We went through -- I had to

19    get not only medical releases but releases for the criminal

20    records as well.  There was probably a few hundred pages of

21    discovery in terms of the documents that existed in this case

22    from family court as well as from criminal court.  And there

23    were not depositions, so we didn't have to engage in

24    depositions.  But that's the extent of it.

25             THE COURT:  And what became of any records that would

DBCLGADC

1   have been triggered by the arrest of these various plaintiffs?

2          MR. HOFFNER:  All of those records would have been

3   sealed in criminal court and in family court considering they

4   were dismissed.

5          THE COURT:  I just want to make sure that I have all

6   of the proposed orders, as well as all of the guardian

7   affidavits.

8          I have infant compromise orders proposed for Kevin

9   Williams, Montana Stephenson, Shanic Williams, Jahleel Brown,

10  and Shaire Barley.  Seem to have two for Shaire Barley.  That's

11  five that I have.

12         MR. MELISSINOS:  I'll tell you.  Jahleel Brown is one.

13  Montana Stephenson is the second.  Kevin Williams is the third.

14  Shaire Barley is the fourth.  And the fifth one is Alshante --

15  I'm sorry -- Alshante Baker.  And Shanic Williams.  So I have

16  copies here for your Honor, but there's six total.

17         THE COURT:  I have six.

18         And then let me run through the guardian affidavits to

19  see what I have.  I have Kevin Williams, Jahleel Brown,

20  Alshante Baker, that's three, Shaire Barley is four, Shanic

21  Williams is five, and Montana Stephenson is six.  So I have

22  six.  I think we're all accounted for.

23         And although I do not, in looking at the stipulation

24  of settlement, I do not see in there provisions either for the

25  deposit of the net revenues for each of the plaintiffs or the

DBCLGADC

1    allocation of expenses and fees to the plaintiffs' counsel.

2         Was it intended that that appear only in the infant

3    compromise orders?

4         MR. HOFFNER:  I didn't put it together.  I received it

5    from Mr. Melissinos.  But I don't recall that I've ever done it

6    having it in the stipulation.  That's sort of just a lump sum.

7    And then to the extent there's an infant comp order, I would

8    provide that to the comptroller and the comptroller would

9    actually cut a check to the guardian and then that would be

10   given because often the city will just give a lump sum for the

11   total amount.

12        And I've done it in the past where it makes more sense

13   for them to cut separate checks so that the bank can receive a

14   check from the comptroller's office with the exact amount

15   that's stipulated in the infant comp order.

16        THE COURT:  Okay.

17        MR. HOFFNER:  So we could do it that way.

18        THE COURT:  Now, am I correct in understanding that

19   defendants, although the stipulation of settlement I've been

20   given does not bear the signature of the defendant's counsel,

21   that the defendants are agreeing to this stipulation of

22   settlement?

23        MR. MELISSINOS:  We are agreeing to it, your Honor,

24   and I have a copy of the fax that I sent last week that has

25   both of our signatures on it if you want.

DBCLGADC

1          THE COURT:  Please.  Okay.

2          Is there anything else that defendants want to add at

3     this point?

4          MR. MELISSINOS:  No, your Honor.  We feel that the

5     settlement is a fair amount as well, especially based on the

6     discovery that was exchanged after the settlement conference

7     that we had before you.  So we think the amount is fair.

8          THE COURT:  Okay.  Anything else on plaintiff's end?

9          MR. HOFFNER:  No.  Thank you.

10         THE COURT:  Well, I have reviewed the submissions that

11    counsel have made to the Court in support of an application to

12    approve the settlements with respect to the six infant

13    plaintiffs.  In view of the contents of those documents, as

14    well as counsel's representations today on the record

15    concerning the nature of the claims and the evaluation that he

16    made of the case, as well as a review of the notes from my one

17    prior, if ultimately somewhat premature settlement conference,

18    I'm satisfied that the proposed settlement for these six

19    younger plaintiffs is reasonable and in their best interest.

20    Given the representations also of their guardians, it appears

21    that all of the guardians are satisfied that the interests of

22    their children are adequately protected by this settlement.

23         And, accordingly, I am recommending at this point that

24    Judge Scheindlin agree to approve the proposed settlement on

25    behalf of the six plaintiffs.

DBCLGADC

1      I expect that the parties will complete and fill in

2  the blanks in the stipulation of settlement so that Judge

3  Scheindlin can act and finally put this case to rest.

4      And I think we'll leave it at that.  Thank you very

5  much.

6      MR. HOFFNER:  Thank you.

7      MR. MELISSINOS:  Thank you, your Honor.

8                       oOo

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25